1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

DANIAL GRAMMER,

11

Plaintiff,

12

v.

13

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

14

Defendant.

15

CASE NO. 3:15-CV-05500-DWC

ORDER ON PLAINTIFF'S
COMPLAINT

16      Plaintiff, Danial Grammer, filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial

17  review of the denial of his applications for Disability Insurance Benefits ("DIB") and

18  Supplemental Security Income ("SSI"). The parties have consented to proceed before a United

19  States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge

20  Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 7.

21      After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") did

22  not err in evaluating the opinions of three of Plaintiff's examining psychologists and one of

23  Plaintiff's treating therapists. Further, the ALJ did not err in concluding Plaintiff's Drug Abuse and

24  Alcoholism ("DAA") impairments were material to a disability determination, and the ALJ did not

1   err in finding Plaintiff's request for a supplemental hearing to be untimely. Therefore, this matter is

2   affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

3   **<u>PROCEDURAL & FACTUAL HISTORY</u>**

4   On September 16, 2010, Plaintiff filed original applications for DIB and SSI. *See* Dkt. 11,

5   Administrative Record ("AR") 170-185. Plaintiff then filed an application for DIB benefits on

6   November 4, 2013, which was consolidated with the original applications. AR 517. Plaintiff

7   alleges he became disabled on March 1, 2008, due to various mental conditions and "drug

8   recovery." *See* AR 170, 199.  Plaintiff's applications were denied upon initial administrative review

9   and on reconsideration. *See* AR 75-118. A hearing was held before ALJ Stephanie Martz on

10   December 13, 2011, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 37.

11   On January 20, 2012, the ALJ found Plaintiff was not disabled within the meaning of

12   Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 31. Plaintiff's request for

13   review of the ALJ's decision was denied by the Appeals Council on January 20, 2012, making that

14   decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR

15   1, 20 C.F.R. §§ 404.981, 416.1481.

16   On May 9, 2013, Plaintiff filed a complaint in this Court seeking judicial review of the

17   Commissioner's final decision. On April 17, 2014, the Hon. Karen L. Strombom recommended the

18   Court find the ALJ erred by improperly rejecting the opinion of Dr. Norma Brown, Ph.D., and

19   recommended the case be remanded to the Commissioner for further administrative proceedings.

20   *Grammer v. Colvin I*, 3:13-cv-5355-RBL, Dkt. 21 (W.D. Wash., Apr. 17, 2014). The Court

21   adopted Judge Strombom's report and recommendation and entered an order reversing and

22   remanding the case for further proceedings. *Grammer v. Colvin I*, 3:13-cv-5355-RBL, Dkt. 22.

23   ALJ Martz held a second hearing on March 10, 2015, and issued a new decision on May 15,

24

ORDER ON PLAINTIFF'S COMPLAINT - 2

2015, again finding Plaintiff was not disabled within the meaning of Sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. AR 405, 417. On July 20, 2015, Plaintiff filed a second complaint in this Court seeking judicial review of the Commissioner's decision on remand.

Plaintiff argues the denial of benefits should again be reversed and remanded for the immediate award of benefits, or in the alternative, for further proceedings, because: 1) the ALJ improperly rejected the opinions of three of Plaintiff's examining psychologists and one of Plaintiff's treating therapists; 2) the ALJ improperly found Plaintiff's DAA impairments to be material to the disability determination, and; 3) the ALJ erroneously found Plaintiff's response to the ALJ's proffered medical interrogatories to be untimely, and therefore improperly rejected Plaintiff's request for a supplemental hearing. Dkt. 21, p. 2.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## DISCUSSION

I.    Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

A.  Standard

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821,

1  830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*,

2  908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining

3  physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth

4  specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v.*

5  *Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can

6  accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

7  clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

8  F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must

9  explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*,

10  157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant

11  probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)

12  (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642

13  F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding

14  [such] evidence." *Flores*, 49 F.3d at 571.

15  ### B.  Application of Standard

16  ### *1.   Norma Brown, Ph.D.*

17  Dr. Brown examined Plaintiff on March 4, 2010. AR 251. On mental status examination,

18  Dr. Brown found Plaintiff exhibited rapid speech, agitated and restless motor activity, labile

19  affect, pressured/accelerated thought process, extreme impulsivity and very poor ability to listen

20  and follow directions. AR 257. During her examination, Dr. Brown also administered several

21  inventories, including the Beck Depression Inventory II, which indicated Plaintiff was suffering

22  from severe depression. AR 258. Dr. Brown diagnosed Plaintiff with generalized anxiety

23  disorder, panic disorder, post-traumatic stress disorder ("PTSD"), impulse control problems,

24

alcohol dependence, cannabis dependence, and amphetamine dependence. AR 253. As a result of these impairments, Dr. Brown found Plaintiff would have severe limitations in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. AR 254. Dr. Brown also found Plaintiff would have marked limitations in his ability to relate appropriately to co-workers and supervisors, and moderate impairments in his ability to interact appropriately in public contacts, in his ability to care for self, including personal hygiene and appearance, and in his ability to maintain appropriate behavior in a work setting. AR 254. Dr. Brown opined these limitations would likely continue to severely interfere with Plaintiff's ability to work, even after drug treatment. AR 258.

The ALJ gave little weight to Dr. Brown's opinions for several reasons:

- Plaintiff was not entirely forthcoming in his reports to Dr. Brown, and to the extent she relied upon Plaintiff's subjective reports, Dr. Brown's opinion was based on inaccurate information. AR 401.  As part of this analysis, the ALJ concluded Dr. Brown erroneously assumed Plaintiff was clean and sober during her evaluation. AR 402;
- Dr. Brown's opinion is inconsistent with Plaintiff's ability to work as a forklift driver for three months in 2013. AR 402;
- Dr. Brown did not explain how she observed several symptoms, such as low energy, emotional lability and anxiety, problems dealing with criticism, and impulse control problems. AR 401;
- Dr. Brown's opinion was couched in terms of a check-box form and was not persuasive. AR 402.
- Dr. Brown did not explain some of Plaintiff's limitations by reference to any of her observations or testing, thus she must have based her assessment on Plaintiff's subjective reports. AR 402;
- Though Dr. Brown described Plaintiff as having various marked and moderate limitations, the claimant denied most of these symptoms while sober, and denied medication for these symptoms throughout the record. AR 402;
- Plaintiff's medical records indicate Plaintiff only exhibited suicidal behavior while under the influence of substances. AR 402.

Plaintiff argues none of the reasons offered by the ALJ were specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Brown's opinion. While not all of the ALJ's reasons for rejecting Dr. Brown's opinion were legally sufficient, the Court finds the

1   ALJ nonetheless supported her decision with several specific and legitimate reasons supported

2   by substantial evidence.

3          The ALJ supported her decision in several ways.  First, the ALJ found Plaintiff was not

4   forthcoming during Dr. Brown's examination, which may have impacted Dr. Brown's opinion.

5   AR 401. For instance, Dr. Brown indicated in her report Plaintiff was taking Depakote and

6   Remeron at the time of his examination; however, the ALJ correctly observes there is no

7   evidence in the record to support this contention. AR 401. The only other documentation of

8   Depakote and Remeron in the record occurs in two non-examining physician's opinions;

9   however, it appears both these physicians obtained this information from Dr. Brown's report. AR

10  77, 87.[1] Also, Dr. Brown indicated Plaintiff lost his prior job with a trucking company in 2007

11  because he "flipped out at work." AR 256, 401. The ALJ found the record did not contain any

12  other references to Plaintiff losing his prior job due to "flipping out," suggesting Dr. Brown did

13  not receive an accurate history from Plaintiff. AR 401. Though Plaintiff disputes this

14  characterization, none of the evidence cited by Plaintiff actually reflects Plaintiff "flipped out" or

15  otherwise explains how Plaintiff lost his prior job in 2007. AR 187, 256, 444-45, 447, 892, 968,

16  994-999. Finally, Dr. Brown's records indicate Plaintiff reported over one month of sobriety at

17  the time of Dr. Brown's evaluation. AR 253. However, as the ALJ noted, this is inconsistent with

18

19

20          [1] Plaintiff argues the lack of evidence in support  Plaintiff's use of Depakote and
    Remeron is irrelevant, as the ALJ had already found Plaintiff was taking Depakote and Remeron
21  in her prior written decision. Thus, Plaintiff argues the ALJ has improperly reversed her previous
    factual findings. However, Defendant correctly notes Plaintiff has overstated the ALJ's findings
22  from the first decision. Dkt. 22, p. 4, AR 25. In the first decision, the ALJ noted Plaintiff testified
    "that he was not taking psychotropic medication because it caused side effects," yet had
23  separately indicated to Dr. Brown he was taking Depakote and Remeron, undermining his
    credibility. AR 25. In the second decision, however, the ALJ noted Dr. Brown's opinion may
24  have been predicated, in part, on an unsupported belief Plaintiff was on medication. *See, e.g.*,
    *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).

1   contemporaneous records reflecting Plaintiff was continuing to use substances at the time of Dr.

2   Brown's evaluation. AR 47-48, 284-85.  The ALJ's conclusion Plaintiff was not forthcoming

3   with Dr. Brown is a specific and legitimate reason, supported by substantial evidence, for

4   discounting Dr. Brown's opinion. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d

5   1219, 1228 (9th Cir. 2009); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

6          Second, the ALJ discounted Dr. Brown's opinion Plaintiff was "unable to maintain

7   competitive employment at the present time due to severe addiction issues as well as severe

8   mental health concerns," because it was contradicted by Plaintiff's subsequent work history. AR

9   254, 258, 402. Though Dr. Brown opined Plaintiff's severe mental health issues, "even after drug

10  treatment, will likely severely interfere with his ability to work," the ALJ noted Plaintiff was

11  able to work for three months as a fork-lift driver after Dr. Brown rendered her opinion. AR 258,

12  402, 423. The record reflects Plaintiff's employment as a forklift driver ended when Plaintiff was

13  involved in an accident while under the influence of marijuana. AR 892, 1052. After the

14  accident, Plaintiff became discouraged and attempted suicide, also while under the influence of

15  substances. AR 424, 892, 1052.  Though Plaintiff argues this three-month period of work should

16  properly be considered an unsuccessful work attempt under Social Security Rulings 84-25 and

17  05-02, Plaintiff testified, were it not for the accident, he would likely have continued to work at

18  this job. AR 434. The ALJ was allowed to rely on this testimony and evidence to conclude Dr.

19  Brown's opinion, particularly in regards to whether Plaintiff's limitations would persist in the

20  absence of drugs and alcohol, was contradicted by the record.[2]

21

22  ────────────────

23          [2] This is distinguishable from a situation such as the one presented in *Lingenfelter v. Astrue*, where the Ninth Circuit held a claimant's brief unsuccessful work attempt was not a clear and convincing reason for discrediting the claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d

24  1028, 1038-39 (9th Cir. 2007). Rather than assessing whether Plaintiff's work activity is

1    Finally, the ALJ rejected Dr. Brown's observations Plaintiff was exhibiting emotional

2    lability, anxiety, problems dealing with criticism, and poor impulse control because Dr. Brown

3    "did not specify how exactly she observed such symptoms." AR 401. Plaintiff argues Dr.

4    Brown's failure to specify how she observed such symptoms was an ambiguity which required

5    the ALJ to recontact Dr. Brown and obtain clarification of her opinion. However, "the weight

6    [the ALJ will] give [an examining physician's] opinions will depend on the degree to which they

7    provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(c)(3). An ALJ is only

8    required to conduct an additional inquiry if the evidence is ambiguous, or the ALJ finds "the

9    record is inadequate to allow for proper evaluation of the evidence." *Tonapetyan v. Halter*, 242

10   F.3d 1144, 1150 (9th Cir. 2001).  *But see Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998)

11   ("[I]f the ALJ *needs* to know the basis of the doctor's opinion, he has a duty to conduct an

12   appropriate inquiry.") (emphasis added).[3] Here, for example, the ALJ noted Dr. Brown did not

13   explain how she would have been able to directly observe Plaintiff's inability to handle criticism.

14

15   inconsistent with his testimony about the existence of disabling limitations, Plaintiff's work
     activity in this case speaks to the question of whether Plaintiff's functional limitations would
16   persist in the *absence* of drug or alcohol use. As discussed in Section II, below, this question is
     critical to assessing whether Plaintiff's DAA impairments are material to a disability
17   determination.

18      [3] Defendant cites 20 C.F.R. §§ 404.1512(e) and 416.912(e) for the proposition that a
     medical source needs to be recontacted only when evidence is inadequate to make a disability
19   determination. However, the Social Security Administration amended 20 C.F.R. §§ 404.1512
     and 416.912 in 2012 to remove subsection (e) and replace it with a provision authorizing an ALJ
20   to obtain consultative examinations under certain circumstances. 77 Fed.Reg. 10651-01 (Feb. 23,
     2012) (codified at 20 C.F.R. §§ 404.1512(e) and 416.912(e)). Nonetheless, it is well-established
21   Ninth Circuit law that an ALJ's independent duty to further develop the record is only triggered
     where the evidence is ambiguous or the ALJ determines the record is inadequate to allow for
22   proper evaluation of the evidence. *See, e.g., Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir.
     2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*citing Smolen v. Chater*, 80
23   F.3d 1273, 1288 (9th Cir. 1996). Further, other regulations give broad discretion to the
     Commissioner in determining whether to recontact a treating medical source. *See* 20 C.F.R. §§
24   404.1520b, 416.920b.

1   AR 252, 401. Rather than an ambiguity or inadequacy requiring further clarification, this is

2   precisely the sort of "conclusory, brief, and unsupported" finding an ALJ is entitled to discount.

3   *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

4        These findings are sufficient to conclude the ALJ supported her rejection of Dr. Brown's

5   opinion with specific and legitimate reasons, supported by substantial evidence. *See DeBerry v.*

6   *Comm'r of Soc. Sec. Admin.*, 352 Fed.Appx. 173, 176 (9th Cir. 2009) (*citing Bayliss*, 427 F.3d

7   1211, 1216 (9th Cir. 2005)). However, since the ALJ made the same error as was addressed by

8   the Court in *Grammer I*, further comment is required.  As the ALJ did in *Grammer I*, the ALJ

9   erred again by finding Dr. Brown's conclusion Plaintiff would have severe limitations in his

10  ability to respond appropriately to and tolerate the pressures and expectations of a normal work

11  setting was based on Plaintiff's self reports rather than her own observations or objective testing,

12  without actually discussing Dr. Brown's mental status examination results. The Court previously

13  found the ALJ assumed Dr. Brown relied primarily on Plaintiff's self-reporting, rather than her

14  own observations, and thus improperly discounted this part of Dr. Brown's opined limitations.

15  *Grammer v. Colvin I*, 3:13-cv-5355-RBL, Dkt. 21, 22.  In *Grammer I*, the Court stated that Dr.

16  Brown's evaluation report:

17          suggests that she relied at least in part on what she observed of plaintiff during her
            evaluation of him. For example, in support of her opinion here Dr. Brown noted
18          that plaintiff was 'very fragile,' which is not out of line with the agitation and
            restlessness, rapid speech, lability, "high" anxiety, pressured/accelerated thought
19          processes, paranoid thought content, and extreme impulsivity she noted in regard
            to plaintiff's mental status examination. . . . It is unclear whether the ALJ properly
20          considered this evidence, given that she did not discuss it when presenting her
            basis for rejecting Dr. Brown's opinion here. That failure to do so was improper.
21

22  *Id.* at p. 7. On remand, however, the ALJ again failed to discuss the results of Dr. Brown's

23  mental status examination. AR 401-02. Instead, the ALJ concluded it was the Court who

24  incorrectly presumed Dr. Brown's opinion *could* have been based on the mental status

ORDER ON PLAINTIFF'S COMPLAINT - 9

examination results, because "Dr. Brown did not explain [the] characterization [of Plaintiff as "very fragile, suicidal, and unlikely to be able to cope with the stress of the workplace"] by reference to any of her observations or the extensive testing she administered." AR 402. The ALJ's conclusion was inconsistent with the contents of Dr. Brown's report and failed to follow established Ninth Circuit law.

An "ALJ may reject a treating physician's opinion if it is based '*to a large extent*' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (emphasis added). However, "when an opinion is not *more heavily* based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (*citing Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)) (emphasis added). Here, Dr. Brown rendered her opinions on a Washington State Department of Social & Health Services ("DSHS") psychological/psychiatric evaluation form ("the DSHS form"). In the section of the DSHS form where Dr. Brown identified Plaintiff's functional limitations, the form clearly instructs the clinician to:

> base the degree of limitation *on interpretation of appropriate tests, along with your own observation during the interview*. The Mental Status Exam results must be included with this evaluation. Any discrepancies between the MSE and severity ratings must be explained.

AR 254 (emphasis added). Dr. Brown completed the DSHS form and included her mental status examination results. AR 254, 256-58. Further, Dr. Brown does not indicate her conclusions Plaintiff is "very fragile, suicidal, and unlikely to be able to cope with the stress of the workplace" deviate from her mental status examination results, and, as the Court suggested in *Grammer I*, the mental status examination results attached to the DSHS form are "not out of line" with Dr. Brown's conclusions in this respect. AR 254. As the form indicates Dr. Brown

1   assessed Plaintiff's functional limitations by reference to her objective testing, and Dr. Brown

2   does not indicate she deviated from her objective testing and clinical observations in rendering

3   her opinion, there is nothing to indicate Dr. Brown's opinions were based *more heavily* on

4   Plaintiff's self-reports rather than her clinical observations. Thus, the ALJ's conclusion Dr.

5   Brown did not explain her characterizations by reference to any objective testing or clinical

6   observations is not supported by substantial evidence.

7        As a result, the ALJ clearly erred on this issue, but the issue was harmless.  "[H]armless

8   error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115

9   (9th Cir. 2012). An error is harmless if "there remains substantial evidence supporting the ALJ's

10  decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina*,

11  674 F.3d at 1115 (*quoting Batson*, 359 F.3d at 1197). An ALJ's errors in evaluating the opinion

12  of an examining physician are harmless if the ALJ nonetheless gave other specific and legitimate

13  reasons supported by substantial evidence for rejecting the opinion. *See DeBerry v. Comm'r of*

14  *Soc. Sec. Admin.*, 352 Fed.Appx. 173, 176 (9th Cir. 2009) (*citing Bayliss*, 427 F.3d 1211, 1216

15  (9th Cir. 2005)). *See also Bartlett v. Colvin*, 2015 WL 2412457, at *9 (D. Or. 2015). Here,

16  despite the ALJ's errors in evaluating Dr. Brown's opinion, the ALJ also provided several

17  specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Brown's

18  opinions. Thus, any errors in the ALJ's review of Dr. Brown's opinion are harmless.

19        As the ALJ had specific and legitimate reasons for discounting Dr. Brown's opinion, the

20  ALJ properly gave Dr. Brown's opinion little weight.

21

22

23

24

1          *2.   Dr. Renee Eisenhauer, Ph.D.*

2          On March 11, 2010, Dr. Eisenhauer reviewed Dr. Brown's medical opinion as part of a

3    GAX review.[4] AR 335. Dr. Eisenhauer offered the following opinion:

4          This man is stressed, depressed, anxious and has a hx of substance
           abuse/dependence but no use since January [2010]. Dr. Brown 3/10 evaluated him
5          and dx GAD, Panic Disorder, PTSD, Impulse Control problems, alcohol, cannabis
           and amphetamine dependence. The latter three were not current. Dr. Brown found
6          him emotionally labile, fragile and suicidal. Severe limitations were found in regard
           to claimant's ability to meet work demands. In light of the examiner's observations
7          and opinions, this is presently approved based on 12.06.

8    AR 335. The ALJ discounted Dr. Eisenhauer's opinion for the following reason:

9          As the GAX Decision issued by R. Renee Eisenhauer, Ph.D. was based entirely on
           the evaluation of Dr. Norma Brown, I have assigned this summary opinion minimal
10         weight for the same reasons I did not find the opinion of Dr. Brown persuasive.

11   AR 403. Plaintiff contends this was not a specific and legitimate reason to discount Dr.

12   Eisenhauer's opinion. The Court disagrees.

13         The ALJ's characterization of Dr. Eisenhower's opinion as a "summary opinion" is

14   accurate. The entirety of Dr. Eisenhauer's report and opinion is comprised of six sentences

15   summarizing Dr. Brown's report and concluding, based on Dr. Brown's opinion, Plaintiff meets the

16   criteria for a Listing. As discussed in Section II(B)(1), above, the ALJ offered specific and

17   legitimate reasons, supported by substantial evidence, for discounting Dr. Brown's opinion.

18   Without Dr. Brown's evidence to support it, Dr. Eisenhauer's opinion is without any support from

19   the record, and the ALJ was entitled to disregard it. 20 C.F.R. § 404.1527(c)(3); *Batson*, 359 F.3d

20   at 1195.

21

22

23   _____

24         [4] "GAX" stands for "General Assistance Expedited Medicaid."

        3.   *Dr. Dan Neims, Psy.D.*

       Dr. Neims examined Plaintiff on March 15, 2011. AR 336. On mental status examination,

Plaintiff demonstrated anxious, dysphoric, and irritable mood; restricted/constricted affect;

tangential thought process; black & white thinking; paranoid ideation; and negative impression

management. AR 343-45. During the examination, Plaintiff also endorsed suicidal ideation and

planning, and described a history of previous suicide attempts, as well as a history of physical and

sexual abuse. AR 345. Dr. Neims observed Plaintiff demonstrating symptoms of anxiety,

depression, and PTSD, and diagnosed Plaintiff with chronic PTSD, anxiety disorder NOS,

dysthymia, methamphetamine dependence in reported remission, and alcohol dependence in

reported remission. AR 337. As a result of these impairments, Dr. Neims opined Plaintiff would

have limitations in the following areas:

- severe limitations in his ability to communicate and perform effectively in a work setting with public contact;
- marked limitations in his ability to communicate and perform effectively in a work setting with *limited* public contact;
- marked limitations in his ability to maintain appropriate behavior in a work setting;
- moderate limitations in his ability to learn new tasks;
- moderate limitations in his ability to perform routine tasks without undue supervision, and;
- moderate limitations in his ability to be aware of normal hazards and take appropriate precautions.

AR 338-39. Dr. Neims ultimately concluded Plaintiff was "disabled from [substantial gainful

activity] for the foreseeable 12 months or longer." AR 339.

       In the original decision, the ALJ gave little weight to Dr. Neims' opinion for the following

three reasons:

       [1][Dr. Neims] did not articulate a significant rationale in support of the assigned
       cognitive and social limitations. [2] In addition, the ultimate issue of disability is
       reserved to the Commissioner, and even treating source opinions on issues reserved
       to the Commissioner are never entitled to controlling weight or special significance
       (Social Security Ruling 96-5p). [3] Dr. Neims is not a treating source and he only
       saw the claimant on one occasion for a disability evaluation.

AR 27-28 (numbering added). However, the ALJ accepted Dr. Neims' opinion the claimant should avoid working with the public. AR 28.

As this Court did not address Dr. Neims' opinion in *Grammer I*, the ALJ incorporated her original discussion of Dr. Neims' opinion by reference in the second written decision. AR 403. In the second written decision, the ALJ also raised one new reason for discounting Dr. Neims' opinion: "Dr. Neims did not evaluate the claimant again after his single evaluation in March 2011." AR 403. Plaintiff argues the ALJ did not offer specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Neims' opinion. The Court disagrees.

First, Dr. Neims' discussion of Plaintiff's functional limitations is unaccompanied by any explanation of his reasoning. AR 338-39. An ALJ may give less weight to a doctor's opinion which is brief, conclusory, and inadequately supported by the record. *Batson*, 359 F.3d at 1195. Second, as to Dr. Neims' opinion Plaintiff was disabled, this is an opinion on an issue reserved to the Commissioner and is therefore not entitled to any special significance. 20 C.F.R. §§ 404.1527(d), 416.927(d). *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (distinguishing between a medical source's conclusory statement an individual is disabled, and an assessment of an individual's *likelihood* of sustaining employment given the various medical factors identified by the medical source). *See also Hinckley v. Colvin*, 2014 WL 1765975, at *2 (W.D. Wash. 2014). Third, the fact Dr. Neims was not a treating source is not, by itself, a specific and legitimate reason for rejecting his opinion. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996)(examining physicians are entitled to less weight than treating physicians, not no weight whatsoever). Nor is the fact Dr. Neims examined Plaintiff only once in 2011, without an explanation of what the ALJ found in subsequent records which undermined Dr. Neims' conclusions, a specific and legitimate reason supported by substantial evidence. However, in

1   light of the ALJ's other specific and legitimate reasons for rejecting Dr. Neims' opinion, any

2   error in the ALJ's reasoning is harmless. *DeBerry*, 352 Fed.Appx. at 176.

3        Because the ALJ had specific and legitimate reasons, supported by substantial evidence,

4   for discounting Dr. Neims' opinion, the ALJ did not err by giving Dr. Neims' opinion little

5   weight.

6                  *4.   Ms. Hueini Chen, M.S.*

7        Ms. Chen provided counseling services to Plaintiff from January through October, 2011.

8   AR 356-62. On November 29, 2011, Ms. Chen completed a mental medical source statement.

9   AR 381-83. As part of this statement, Ms. Chen opined Plaintiff had marked limitations across a

10   variety of functional areas, including but not limited to his ability to:  maintain attention and

11   concentration for extended periods; perform activities within a schedule; maintain regular

12   attendance; be punctual within customary tolerances; complete a normal workday and workweek

13   without interruptions from psychologically based symptoms; and perform at a consistent pace

14   without an unreasonable number and length of rest periods. AR 381-83. Ms. Chen also opined

15   Plaintiff would have four or more absences per month from work, and indicated the limitations

16   noted on the form do not include limitations from current alcohol or drug abuse. AR 383.

17        As with Dr. Neims, the ALJ incorporated her discussion of Ms. Chen's opinions from the

18   first written decision by reference. AR 403. In the first written decision, the ALJ discounted Ms.

19   Chen's opinions for the following two reasons:

20       [1] Although she is the claimant's therapist, she did not cite any objective signs or
         findings or provide any rationale in support of the assessed limitations. Opinions

21       rendered on check-box forms without a significant explanation of the bases for
         conclusions may appropriately be accorded little or no weight. [2] Furthermore,

22       the claimant's performance on mental status examination and his daily activities
         show he is substantially more capable than Ms. Chen opined. She opined that the

23       claimant was markedly limited in the ability to maintain concentration for
         extended periods, but his mental status examinations consistently showed normal

24

concentration. Ms. Chen opined that the claimant was markedly limited in the ability to accept instructions and respond appropriately to supervisors. However, the claimant reported he got along with bosses and other authority figures okay [AR 223].

AR 29 (numbering added). Though Ms. Chen treated Plaintiff, Ms. Chen is a therapist, rather than a clinical psychologist holding a Ph.D. or Psy.D.; thus, under Social Security Administration Regulations, she is not considered an "acceptable medical source." 20 C.F.R. § 404.1513(a) and (d) (describing the category of "acceptable medical sources" and indicating therapists are not considered an acceptable medical source). Therefore, the ALJ was only required to provide germane reasons for discounting her opinion. *See* 20 C.F.R. § 404.1513(a) and (d); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).

Plaintiff argues the ALJ committed harmful error by rejecting Ms. Chen's opinion due to the fact it was rendered on a check-box form. The Court disagrees. First, Plaintiff misstates the ALJ's reasoning. The ALJ indicated she rejected Ms. Chen's opinion because it was rendered on a check-box form "*without a significant explanation* of the bases for [her] conclusions." AR 29 (emphasis added). Rather than rejecting Ms. Chen's opinion because of the *form* on which it was rendered, the ALJ properly discounted Ms. Chen's opinion because Ms. Chen did not provide any support for her opinions. *Molina*, 674 F.3d at 1111-12; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). *See also* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *4. Second, even if the ALJ was required to look to Ms. Chen's treatment notes as support for her opinion, Plaintiff has failed to demonstrate how Ms. Chen's treatment notes actually support Ms. Chen's opinion. *See Garrison*, 759 F.3d at 1013-14; *Shoaf v. Colvin*, 2015 WL 9455558, at *3, n. 6 (C.D. Ca. 2015). Finally, even if the ALJ erred in rejecting Ms. Chen's opinion for this reason, Plaintiff does not address the ALJ's other reason for discounting Ms. Chen's opinion. Though Ms. Chen opined Plaintiff was markedly limited in his ability to maintain concentration for

1   extended periods, mental status examinations throughout the record reflect Plaintiff

2   demonstrated normal concentration. AR 257, 327, 353. Further, while Ms. Chen opined Plaintiff

3   was markedly limited in his ability to accept instructions and respond appropriately to

4   supervisors, the ALJ noted Plaintiff has reported he got along with supervisors "okay." AR 29,

5   223. These were germane reasons for the ALJ to discount Ms. Chen's opinion. *See Carmickle v.*

6   *Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1164 (9th Cir. 2008).

7       Because the ALJ had germane reasons for discounting Ms. Chen's opinion, the ALJ did

8   not err by giving Ms. Chen's opinion little weight.

9      II.     Whether the ALJ Properly Evaluated Plaintiff's DAA Impairments.

10        **A. Standard**

11       A DAA impairment, like any other severe impairment, has the potential to render an

12   individual "unable to engage in any substantial gainful activity," thus meeting the threshold

13   definition of disability under the Social Security Act. *See* 42 U.S.C. §§ 423(d)(1),

14   1382c(a)(3)(A). However, in 1996, Congress amended the Social Security Act "to discourage

15   alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy."

16   *Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir. 2001). If an individual only meets the definition

17   of disability *because* of a DAA impairment (whether on its own or in combination with other

18   impairments), the DAA impairment is "a contributing material factor" to the disability finding,

19   and the Social Security Act requires that individual "not be considered to be disabled." Contract

20   with America Advancement Act, Pub. L. No. 104-121, § 105, 110 Stat. 847 (1996) (codified as

21   amended at 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)). *See also* SSR 13-2p, 2013 WL 621536,

22   *4 ("DAA is material to the determination of disability if the claimant would not meet [the]

23

24

1    definition of disability if he or she were not using drugs or alcohol."). In order to determine

2    whether a DAA impairment is material to a finding of disability,

3          the ALJ must conduct a drug abuse and alcoholism analysis ("DAA Analysis") by
           determining which of the claimant's disabling limitations would remain if the
4          claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b). If the
           remaining limitations would still be disabling, then the claimant's drug addiction
5          or alcoholism is not a contributing factor material to his disability. If the
           remaining limitations would not be disabling, then the claimant's substance abuse
6          is material and benefits must be denied. *Id.*

7    *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007). A claimant has the burden of demonstrating

8    their use of drugs or alcohol is not a contributing factor material to the disability finding. *Id.* at

9    746.

10              **B.  Application of Standard**

11          The DAA materiality issues presented by this case turn on the question of whether

12   Plaintiff's most extreme psychological symptoms and impairments—including his multiple

13   suicide attempts—are secondary to, or completely independent from, his DAA impairment. On

14   this question, the record is ambiguous. It is true, there are many items in the record which could

15   support a conclusion that Plaintiff's functional limitations and episodes of decompensation were

16   the result of Plaintiff's other mental health issues, rather than his DAA impairments. AR 313-16,

17   326, 338, 358-60383, 892-93, 895-97, 971, 981-82. However, the obverse is also true. For

18   example, the ALJ cites evidence in the record indicating Plaintiff's past history of suicide

19   attempts occurred while Plaintiff was under the influence of substances. AR 396-98, 892-98,

20   1052-53. But, in periods of sobriety shortly after these attempts, Plaintiff indicated he was not

21   interested in engaging in suicidal behavior. AR 397, 895, 979, 1053-55. In fact, during these

22   periods, Plaintiff recognized the role drug and alcohol abuse played in his suicidal behavior. AR

23   1052 ("He states that as long as he is in a sober environment and receiving help that he will not

24

1    revert to suicide.") *See also* AR 976, 979. As discussed in Section I, above, the ALJ also

2    discounted the opinions of several examining and treating medical sources who opined Plaintiff's

3    severe limitations would persist even in the absence of substance use. AR 400-403. The ALJ also

4    gave significant weight to several State Agency medical consultants who found Plaintiff had

5    limitations consistent with the ALJ's residual functional capacity finding in the absence of the

6    DAA impairments. AR 524-29, 549-55; 557-68. Finally, the ALJ gave significant weight to an

7    acceptable medical source who opined Plaintiff would be capable of "simple, repetitive , and

8    even more detailed work involving 3-4 step operations with no more than occasional contact

9    with the general public, supervisors, and coworkers," provided Plaintiff was abstinent from drugs

10    and alcohol. AR 399, 1090.

11        Faced with ambiguities in the record, the Court may not substitute its judgment for that of

12    the ALJ. *Batson* 359 F.3d 1190, 1196 (9th Cir. 2004). The Court's inquiry under these

13    circumstances is limited to assessing whether the ALJ's interpretation of the evidence is rational;

14    if so, the Court will not disturb the ALJ's findings. *See Thomas v. Barnhart*, 278 F.3d 947, 954

15    (9th Cir. 2002). Here, the ALJ concluded Plaintiff's severe limitations and suicidal behavior

16    improved when Plaintiff was not under the influence of substances, and, as discussed above,

17    supported this finding with substantial evidence. AR 396-98. Further, as discussed in Section I,

18    above, the ALJ properly evaluated and discounted the medical opinion evidence relied upon by

19    Plaintiff, including Dr. Brown's opinion, Dr. Neims' opinion, and Ms. Chen's opinion.  In light

20    of the ALJ's resolution of the medical opinion evidence and the substantial evidence supporting

21    the ALJ's conclusions concerning the influence of substances on Plaintiff's suicidal behavior, the

22    Court finds the ALJ's interpretation is a rational one, which the Court will not disturb. Thus, the

23    ALJ did not err in considering the materiality of Plaintiff's DAA impairments.

24

III.     <u>Whether the ALJ Properly Rejected Plaintiff's Request for a Supplemental Hearing.</u>

Plaintiff argues the ALJ improperly rejected his request for a supplemental hearing as untimely; thus, Plaintiff argues Dr. Robert Pelc, Ph.D.'s report ought to be excluded from the record.

After the conclusion of the second hearing, the ALJ submitted a request for interrogatories from consulting medical expert Dr. Pelc. AR 727-35. In a letter dated March 30, 2015, the ALJ advised Plaintiff's counsel of her intent to incorporate these interrogatories into the record, and informed Plaintiff's counsel he could request a supplemental hearing. AR 740. The ALJ advised Plaintiff's counsel he must receive a request for a supplemental hearing within 10 days after Plaintiff received the letter. AR 741. According to the Program Operation Manual System ("POMS") "[the Social Security Administration] presumes the date that the individual receives the notice is is 5 days after the date on the mailed notice, unless the individual can show us that he or she did not receive the notice within the 5 days" POMS GN 03102.100.  *See also* 20 C.F.R. § 422.210(c) (in calculating the timeframe to institute a civil action, "the date of receipt of notice . . . shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary"); POMS SI 02301.300 ("[the Social Security Administration] presume[s] that receipt is 5 days after the date on the mailed notice unless there is reason to believe otherwise."); HALLEX I-2-7-30 (Apr. 17, 2015). Based on this presumption, Plaintiff had until April 14, 2015 to respond to the ALJ's letter, unless Plaintiff offered a "reason to believe" he did not receive the letter within 5 days.

Plaintiff's counsel did not respond to the ALJ's letter until April 17, 2015, which the ALJ received on the same day. AR 743-44. On April 20, 2015, the ALJ sent the following letter to Plaintiff's counsel:

1         On April 17, 2015, we received your letter requesting a supplemental hearing. You stated that you received our proffer correspondence on April 7, 2015. As this is eight days after the letter was sent, please provide proof of the date the letter was delivered to your office. The documentation must show when the letter was received in your office, not the date you reviewed the letter. Please provide this documentation by May 5, 2015 using the enclosed bar code.

4  AR 744. In response, Plaintiff's counsel submitted a second letter on April 24, 2015 with a log

5  entry from April 7, 2015. AR 745. This log entry states, in its entirety: "4/7/2015 3:00pm

6  Scanned Correspondence Additional evidence from seattle [sic] ODAR." The ALJ found this did

7  not satisfy her prior request for proof of the date the letter was received, as it only indicates when

8  the letter was scanned. AR 388. Thus, the ALJ proceeded to deny Plaintiff's request for a

9  supplemental hearing as untimely. AR 388.

10         Plaintiff argues the ALJ "misunderstood" Plaintiff's counsel's representations concerning

11  when he received the letter. Dkt. 21, p. 18. However, it is quite clear from the record that no such

12  misunderstanding occurred. The ALJ's April 20th letter clearly indicates she understood

13  Plaintiff's counsel was representing he received the letter on April 7. AR 744. The ALJ simply

14  asked Plaintiff's counsel to "provide proof of the date the letter was delivered to [counsel's]

15  office." AR 744.

16         The ALJ's reading of Plaintiff's log entry concerning the date the record was scanned is

17  reasonable. There is nothing on the scan log which reflects the date the letter was received, only

18  the date the letter was scanned. AR 746. The only information linking the date Plaintiff's counsel

19  received the letter with the date the letter was scanned was Plaintiff's counsel's personal

20  statement—which, as the ALJ made quite clear, she did not find sufficient to overcome the five-

21  day presumption. AR 744. Moreover, even if Plaintiff's request for a hearing was timely and Dr.

22  Pelc's reports ought to have been excluded from the record, Plaintiff has failed to demonstrate

23  how any error would not be "inconsequential to the ultimate nondisability determination," in

24

1 │ light of the other medical evidence in the record. *Molina*, 674 F.3d at 1115. AR 524-29, 549-55;

2 │ 557-68.

3 │      The ALJ's finding that Plaintiff's counsel did not prove he received the ALJ's notice on

4 │ April 7, 2015  was supported by substantial evidence, thus the ALJ did not err by rejecting

5 │ Plaintiff's request for a supplemental hearing as untimely. *Cf. Clark v. Colvin*, 2013 WL

6 │ 6095842, at *4-*5 (W.D. Wash. 2013).

7 │ <u>**CONCLUSION**</u>

8 │      Based on the above stated reasons and the relevant record, the undersigned finds the ALJ

9 │ properly concluded Plaintiff was not disabled. Therefore, the court orders this matter be affirmed

10 │ pursuant to sentence four of 42 U.S.C. § 405(g). Judgment should be for Defendant and the case

11 │ should be closed.

12 │      Dated this 21st day of March, 2016.

13 │

14 │

15 │ David W. Christel
    United States Magistrate Judge

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │